| | |
|---|---|
| | **UNITED STATES DISTRICT COURT** |
| | **SOUTHERN DISTRICT OF CALIFORNIA** |

| | |
|---|---|
| KIM-FUN W. WU,<br><br>                        Plaintiff,<br>vs.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br><br>                        Defendant. | CASE NO. 06cv0791 BTM (JMA)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Kim-Fun W. Wu claims she became disabled on January 31, 1994 due to depression, a somatization disorder, and a personality disorder. On November 18, 2002 Plaintiff filed an application for Disability Insurance Benefits and her application was denied both initially and on reconsideration. (Tr. 17, 26-29, 31-34.) Administrative Law Judge Peter J. Valentino ("ALJ") held a hearing on November 5, 2004 and, in a decision filed on January 19, 2005, found Plaintiff not disabled and therefore ineligible for Disability Insurance Benefits. (Tr. 17-23.) The ALJ's decision, on behalf of the Social Security Commissioner, became final when the Appeals Council declined to review his findings. (Tr. 4-6.)

Plaintiff presently seeks judicial review of the ALJ's decision under 42 U.S.C. § 405(g). For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's cross-motion for summary judgment, and reverses and remands the decision of the ALJ.

## II. FACTUAL BACKGROUND

Plaintiff is a woman of 66 years with a college degree and post-graduate education. (Tr. 51, 76, 119.) She worked as a computer programmer prior to onset of the alleged disability on January 31, 1994 due to depression, a somatization disorder, and a personality disorder. (Tr. 482.) Plaintiff met the disability insured status requirements of Title II of the Social Security Act between January 31, 1994 and June 30, 1999, the disability period presently under review. 42 U.S.C. §§ 401-33. (Tr. 26.)

Plaintiff has a family history of suicide and suicide attempts, including her father, brother, and grandmother, as well as a personal history of recurrent depressive issues dating back to 1968. (Tr. 122, 160-61, 170, 172, 325.) Prior to onset of the alleged disability, Plaintiff went on short-term disability leave at least twice as a result of depression. (Tr. 79, 183.)

Between July 1988 and June 22, 1995, Dr. Richard Kerley regularly treated Plaintiff in Kaiser Permanente's Department of Psychiatry. (Tr. 217-18, 142, 140-218.) During those seven years, Dr. Kerley treated Plaintiff on numerous occasions, including at least 11 times between onset of the alleged disability and their last consultation on June 22, 1995. (Tr. 176-217.) Dr. Kerley prescribed Plaintiff a number of anti-depressants during the alleged disability period, predominately Paxil,[1] Restoril,[2] Ativan,[3] and Trilafon.[4] (Tr. 178.)

On February 2, 1995, Dr. Kerley diagnosed Plaintiff with "recurrent major depression which has been only partially responsive to various anti-depressants." (Tr. 183.) Dr. Kerley stated that although Plaintiff had received non-psychiatric treatment and

---

[1] Principally used "[t]o treat symptoms of major depression, obsessive-compulsive disorder, and social anxiety disorder." Simeon Margolis, The Johns Hopkins Consumer Guide to Drugs 579 (2002).

[2] Principally used for insomnia. See id. at 713.

[3] Prescribed for anxiety and insomnia. See id. at 455.

[4] Prescribed to treat "psychotic conditions (severe mental disorders characterized by distorted thoughts, perceptions, and emotions), such as schizophrenia." See id. at 594.

1 various diagnoses from a number of doctors, he believed her "psychiatric problems are
2 primary and are related to a mixture of personality problems, depression, and
3 somatization/conversion." (Id.) In closing, Dr. Kerley opined that Plaintiff "is indeed
4 highly symptomatic and very distressed. I doubt she could hold any job and avoid getting
5 into severe difficulty because of her limitations in inter-personal relations." (Id.)

6     In the summer of 1995, Plaintiff moved to Hong Kong and remained there until
7 sometime in 1997. (Tr. 176, 486-87, 492.) Although complaining of depression while
8 abroad, Plaintiff medicated herself and did not seek professional treatment. (Tr. 487.) In
9 May 1999, after returning to the United States, Plaintiff joined a depression study through
10 which she was prescribed Serzone, a drug used to treat major depression.[5] (Tr. 147,
11 160, 488-89.) Plaintiff participated until October 1999 when, at the behest of the study's
12 attending physician, she returned to regular psychiatric treatment. (Tr. 19, 490.)

13     In May 2000, psychologist Alex B. Caldwell, Ph.D., conducted the Minnesota
14 Multiphasic Personality Inventory-2 Test ("MMPI-2") on Plaintiff. (Tr. 220-230.) In his
15 final report, Dr. Caldwell diagnosed Plaintiff with borderline states, transient
16 decompensations, mixed personality disorders, depression, and paranoid personality
17 disorders. (Tr. 222-23.) He stated Plaintiff's behavior under stress "is likely to become
18 seriously inappropriate if not borderline psychotic" and "others are apt to see her as
19 unpredictable, difficult, and hard to understand" despite her attempts to cover her hostility,
20 resentment, and irritability. (Tr. 221.) Dr. Caldwell also noted Plaintiff's profile "suggests
21 a severe suicide risk." (Tr. 223.)

22     Plaintiff's various treating psychiatrists between 2002-2004, including physicians
23 from Scripps Clinic and UCSD Outpatient Psychiatric Services, all concluded Plaintiff's
24 severe major depressive disorder, somatization disorder, and personality disorder
25 precluded her from working. (Tr. 260, 362, 365, 410.)

26     In 2003, state physicians reviewed Plaintiff's file. (Tr. 329-344.) Dr. Ed O'Malley
27 concluded on the Psychiatric Review Technique Form ("PRTF"), without comment, that

28

---

[5] See Margolis, supra, at 534.

1 there was insufficient evidence to diagnose Plaintiff with a medically determinable
2 impairment, and his decision was affirmed by another state physician. (Tr. 329-342.)
3 Upon a third review, state physician Stuart Brodsky, D.O., agreed with the decision and,
4 again without additional notation, concluded "there [was] insufficient evidence during that
5 period in which to adjudicate from a physical standpoint." (Tr. 344.)

## III. THE ALJ'S DECISION

8       The Social Security Regulations mandate a five-step sequential evaluation to
9 determine whether a claimant is disabled within the meaning of the Social Security Act
10 ("Act"). The five steps are as follows: (1) Whether the claimant is presently working in
11 any substantial gainful activity. If so, claimant is not disabled. If not, the evaluation
12 proceeds to step two. (2) Whether claimant's impairment is severe. If not, claimant is not
13 disabled. If so, the evaluation proceeds to step three. (3) Whether the impairment meets
14 or equals a specific impairment listed in Appendix 1 to Subpart P of Part 404. If so,
15 claimant is disabled. If not, the evaluation proceeds to step four. (4) Whether claimant is
16 able to do any work she has done in the past. If so, claimant is not disabled. If not, the
17 evaluation continues to step five. (5) Whether claimant is able to do any other work. If
18 not, claimant is disabled. Conversely, if the Commissioner can establish there are a
19 significant number of jobs in the national economy available to one of claimant's abilities,
20 the claimant is not disabled. 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d
21 1094, 1098-99 (9th Cir. 1999).

22       The ALJ determined that (1) Plaintiff had not engaged in substantial gainful activity
23 since the onset of her alleged disability, but (2) she nonetheless lacked a "severe"
24 impairment lasting, or expected to last, at least 12 continuous months. (Tr. 18-19.)
25 Specifically, the ALJ concluded Plaintiff's impairments were non-severe and did not
26 significantly limit her physical or mental ability to conduct basic work activities such as
27 "understanding, carrying out and remembering simple instructions; use of judgment;
28 responding appropriately to supervision, co-workers and usual work situations; and

dealing with changes in a routine work setting." (Tr. 18.); See 20 C.F.R. § 404.1521(b).

The ALJ found that Plaintiff's impairment was not "severe" at step two because: Dr. Kerley's disability opinion was entitled to little weight; Plaintiff traveled "frequently" prior to 1999; she got better after moving to Hong Kong and did not seek psychiatric treatment again until 1999; during this time period, she engaged in daily activities like dancing, gardening, cooking, computer work, volunteer work, and involvement with her home owners association; and the medical records show that she suffered only from episodic bouts of depression that improved within a short time of treatment. (Tr. 19, 21-2.)

In finding Plaintiff's impairments were "non-severe," the ALJ accorded "little weight" to Dr. Kerley's opinion that Plaintiff's impairments rendered her disabled for the following reasons: Plaintiff saw Dr. Kerley only eleven times between January 1, 1994 and June 22, 1995; clinical observations showed Plaintiff lacked suicidal or homicidal ideations; she had no decrease in logical thinking despite forgetfulness; the opinion conflicted with the weight of the medical evidence and was unsupported by acceptable clinical and laboratory findings. (Tr. 20.); See 20 C.F.R. § 404.1527(d)(2); Social Security Regulation ("SSR") 96-2p.

## IV. DISCUSSION

Plaintiff contends that (1) the ALJ improperly rejected the opinion of Plaintiff's treating physician Doctor Kerley; and (2) the ALJ's decision was not supported by substantial evidence in the record. The Court finds the ALJ's rejection of Doctor Kerley's opinion was improper because it was not based on specific and legitimate reasons supported by substantial evidence in the record. Therefore, crediting Dr. Kerley's opinion as a matter of law, the ALJ's finding that Plaintiff's impairment was not "severe" is not supported by substantial evidence.

///
*///*
*///*

### A.  Standard of Review

The Commissioner's denial of disability benefits will be disturbed on appeal only where the ALJ's findings are based on legal error or are unsupported by substantial evidence. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance of relevant evidence, and is evidence such that reasonable minds, considering the entirety of the record, might accept as support for the conclusion. Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991). The court must weigh the evidence that supports and detracts from the ALJ's conclusion and, where the evidence tends to support either outcome, the Court cannot substitute its own opinion for that of the ALJ. Martin v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986); Matney v. Sullivan, 981 F.2d 1016, 1018 (9th Cir. 1992).

### B.  Rejection of Treating Physician's Opinion

As a general matter, opinions of treating physicians are given controlling weight when supported by medically acceptable diagnostic techniques and when not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.  Where a treating doctor's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  In doing so, the ALJ must do more than proffer his own conclusions – he must set forth his own interpretations and why they are superior to that of the treating physician's. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ may meet this burden by conducting a detailed and thorough discussion of the facts and conflicting evidence, and by explaining his interpretations and findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

In the present instance, Dr. Kerley's psychiatric opinion was contradicted by the State's reviewing physicians and, therefore, the ALJ must proffer "specific and legitimate reasons" to properly reject his opinion. Reddick, 157 F.3d at 725; (Tr. 344.)  Upon review

of the record, the Court finds that the ALJ's proffered reasons for rejecting Dr. Kerley's opinion were not legitimate and were not supported by substantial evidence.

First, although the ALJ stated "Dr. Kerley's mental status exams showed no evidence of suicidal or homicidal ideations or hallucinations," Plaintiff's clinical records reflect otherwise. (Tr. 20.)  Dr. Kerley's clinical observations indicate that Plaintiff had recurrent suicidal ideations, noting she "longs for death," "cannot stand it any more," had "no desire to live," "wants to die," "thinks she'll die soon," has "suicidal thoughts without plan or intent," "felt suicidal," and had plans to cut her wrists and "jump" but did not attempt suicide. (Tr. 182, 162, 176, 184, 173, 164, 167.)  While the record indicates Plaintiff was occasionally free of suicidal machinations, an ALJ may not selectively focus on aspects of clinical observations tending to suggest non-disability while ignoring regular signs indicating the contrary.  Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001).

Second, the ALJ noted Plaintiff lacked a "decrease in ability to think logically despite complaints of forgetfulness." (Tr. 20.)  Although Dr. Kerley's notes of April 19, 1995 indicate that Plaintiff had "complaints of forgetfulness, but no decrease in ability to think logically," other medical records reflect that Plaintiff's forgetfulness and lack of concentration were significant enough to interfere with her ability to function.  According to other notes of Dr. Kerley, Plaintiff's concentration was "always bad" and she had trouble remembering tasks "from one minute to the next," had difficulty making simple decisions, was very disorganized, was having trouble with household chores, and "[g]ets disoriented because she has trouble maintaining her attention." (Tr. 180, 182.) Additionally, later medical records noted that Plaintiff had trouble remembering when depressed and was "absent-minded." (Tr. 120, 161.)

Third, the ALJ accorded Dr. Kerley's opinion little weight because Plaintiff saw him "only eleven times between January 1, 1994 and June 22, 1995." (Tr. 20.)

///

///

///

1  However, it appears that the ALJ did not fully consider Plaintiff and Dr. Kerley's long-
2  standing treatment relationship – a relationship spanning seven years with numerous
3  visits. (Tr. 176-217.) The opinions of treating sources are preferred over all others in part
4  because these medical sources are best able to provide a "detailed, longitudinal picture"
5  of the claimant's impairment and, only where it is shown the physician did not treat the
6  patient long enough to obtain the requisite perspective, is the opinion entitled to little
7  weight. Holohan v. Massanari, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); See 20 C.F.R.
8  §§ 404.1527(d)(2), (d)(2)(i). Here, there is no reason to conclude that seven years of
9  treatment and 11 visits in 18 months is a frequency inconsistent "with accepted medical
10 practice" such that Dr. Kerley was unable to obtain a longitudinal picture of Plaintiff's
11 impairment. See 20 C.F.R. § 404.1502.
12         Fourth, despite the ALJ's contention Dr. Kerley's findings are unsupported by
13 acceptable clinical findings, Dr. Kerley's records contain ample clinical observations
14 corroborating his opinion. (Tr. 20.) Among other things, Dr. Kerley observed that
15 Plaintiff was "frequently tearful," "depressed,"and "sad." (Tr. 176, 177, 180.) Dr. Kerley
16 also observed that Plaintiff was "anxious, angry, argumentative, [and] depressed," and
17 was "hyper-emotional - alternatively crying, laughing, or angry." (Tr. 180, 184, 185.)
18         Dr. Kerley's clinical psychiatric notations are sufficient support for Dr. Kerley's
19 opinion because objective laboratory results are not the exclusive means for supporting a
20 conclusion of disability; a finding of disability may also be predicated on medically-
21 acceptable clinical diagnoses. Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).
22 Clinical observations and diagnoses of treating psychiatrists and psychologists are
23 essential to a mental disability inquiry because psychiatric impairment is "not as readily
24 amenable to substantiation by objective laboratory testing." Christensen v. Bowen, 633
25 F.Supp. 1214, 1220-21 (N.D. Cal. 1986) (quoting Lebus v. Harris, 526 F.Supp. 56, 60
26 (N.D. Cal. 1981)); See also SSR 85-16. Although a medically determinable mental
27 impairment cannot be established by symptoms alone, an anatomical, physiological, or
28 psychological abnormality that can be shown by medically acceptable clinic diagnostic

1  techniques – including assessment by psychiatrists or psychologists – represents a
2  medical "sign" rather than "symptom." SSR 96-4p n.2; 20 C.F.R. app. 1, subpt. P,
3  12.00(B) § 404. Accordingly, it is improper to require that mental disabilities be
4  established by precise scientific methods or laboratory results. Christensen, 633 F. Supp
5  at 1220-21; 42 U.S.C. § 423(d)(3).

6  Moreover, in May 2000, Dr. Caldwell conducted the MMPI-2 Test on Plaintiff and
7  found her behavior under stress "is likely to become seriously inappropriate if not
8  borderline psychotic," that "others are apt to see her as unpredictable, difficult, and hard
9  to understand," her "[p]attern suggests a severely depressed emotional tone," and her
10 "profile suggests a severe suicide risk." (Tr. 221-223.) The report concluded Plaintiff
11 suffered from depression, borderline states, transient decompensations, and mixed and
12 paranoid personality disorders. (Tr. 222.) Although the report post-dates the disability
13 period under adjudication, it is nonetheless germane because most medical reports "are
14 inevitably rendered retrospectively and should not be disregarded solely on that basis."
15 Smith v. Bowen, 849 F.2d 1222, 1225-26 (9th Cir. 1988). The SSA specifically endorses
16 the MMPI-2 Test as a "well-standardized psychological test" that is useful in establishing
17 the existence of a mental impariment. 20 C.F.R. app. 1, subpt. P, 12.00(D) § 404.

18 None of the ALJ's proffered reasons for rejecting Dr. Kerley's opinion provide a
19 specific and legitimate basis supported by substantial evidence in the record. In reaching
20 this conclusion, the Court notes that major depressive disorder is, by its very nature,
21 episodic. It involves periodic waxing and waning of symptoms, including complete
22 symptomatic resolution before onset of other distinct depressive episodes. American
23 Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 369 (Text
24 Revision 4th ed. 2000). "That a person who suffers from . . . anxiety, and depression
25 makes some improvement does not mean that the person's impairments no longer
26 seriously affect her ability to function in a workplace." Holohan, 246 F.3d at 1205; See
27 also Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1996). Here, Plaintiff's episodic
28 depression, interspersed with occasional symptom-free periods, is not inconsistent with

major recurrent depression.

When the ALJ incorrectly rejects a treating physician's opinion, the court credits that opinion as a matter of law. Lester, 81 F.3d at 834. When according Dr. Kerley's opinion proper weight, it is readily apparent Plaintiff's impairment was "severe" within the meaning of the Act. In evaluating mental impairments at step two, the ALJ must rate a claimant's functional limitations on a five-point scale in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[6] 20 C.F.R. §§ 404.1520a(c)(3)-(4). The inquiry is merely a "de minimis screening device to dispose of groundless claims," and unless a finding of non-severity is clearly established by the evidence, the sequential evaluation must proceed to step three. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996); See also SSR 85-28; SSR 86-8.

Dr. Kerley was Plaintiff's primary, if not exclusive, treating psychiatrist during the period under adjudication and treated her extensively. Based on his clinical observations and longitudinal picture of Plaintiff's impairment, Dr. Kerley expressed doubt that Plaintiff would be able to hold any job due to her inter-personal limitations. (Tr. 183.) Crediting Dr. Kerley's conclusions as a matter of law, the evidence establishes that Plaintiff's mental impairments were "severe" because she displayed at least "marked," if not "extreme," limitations in her social functioning, including her ability to respond appropriately to supervision and cooperate with coworkers. 20 C.F.R. app. 1, subpt. P, 12.00(C)(2) § 404. Moreover, Plaintiff also suffered from poor concentration and impaired memory.[7]

---

[6] The five-point scale involves ratings of "none, mild, moderate, marked, and extreme." Episodes of decompensation are rated on a four-point scale. 20 C.F.R. § 404.1520a(c)(4).

[7] The Court notes that the ALJ failed to make specific findings as to the degree of limitation in the four functional areas as required by SSA regulations. 20 C.F.R. § 404.1520a(e)(2) ("The [ALJ's] decision *must* include a specific finding" on the four functional limitations) (emphasis added). Further, the PRTF failed to rate Plaintiff's degree of functional limitation at the initial administrative review level or upon review by the ALJ as required by 20 C.F.R. § 404.1520a(d)(2). (Tr. 339.) However, the Court does not find it necessary to remand to the ALJ to make these findings because the evidence clearly indicates Plaintiff's impairment is "severe." Cf. Gardner v. Smith, 368 F.2d 77, 86 (9th Cir. 1966) (explaining that where the record is fully developed, the Court can make a final determination and evaluate

1    In support of his finding of "non-severity," the ALJ noted that the record did not
2 disclose a severe impairment lasting 12 continuous months as required by SSA
3 regulations. 20 C.F.R. § 404.1505(a). However, crediting Dr. Kerley's opinion, Plaintiff's
4 severe impairment lasted at least from January 31, 1994 until her final treatment with Dr.
5 Kerley on June 22, 1995. Under applicable law, the disability must last, or be expected to
6 last, at least 12 months beginning with the *onset* of disability. SSR 82-52. Plaintiff's
7 alleged onset of disability was on January 31, 1994. Therefore, Plaintiff has satisfied the
8 duration requirement under step two.[8]

9    In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr.
10 Kerley's opinion, constituting reversible legal error. Edlund, 253 F.3d at 1160. By failing
11 to provide sufficient weight to that opinion, the ALJ's conclusion that Plaintiff's mental
12 impairment was "non-severe" lacked substantial evidentiary support in the record.
13 Accordingly, the Court reverses and remands the matter to continue the sequential
14 evaluation at step three.

15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///

---

24 whether substantial evidence would support the Secretary's denial of benefits if the appropriate test had been applied).

25 [8] The ALJ indicates that Plaintiff's mental health improved after she moved to Hong Kong in the summer of 1995. Whether there was a cessation of disability at any point after the initial 12-month period of disability, which would affect the amount of any benefits awarded, is not an issue for this Court to decide. The issue before the Court is Plaintiff's *eligibility* for benefits. However, the Court notes that Plaintiff testified that she continued to suffer from depression in Hong Kong and medicated herself. (Tr. 487-88.) After her return to the United States, her various treating physicians unanimously concluded that she suffered from severe major depressive disorder and personality disorders.

## V. <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff's motion for summary judgment is **GRANTED**. Defendant's cross-motion for summary judgment is **DENIED**. The decision of the ALJ is reversed and this matter is remanded to the Commissioner to continue the sequential evaluation process at step three. The Clerk shall enter judgment accordingly. **IT IS SO ORDERED.**

DATED: December 12, 2006

*Barry Ted Moskowitz*

Hon. Barry Ted Moskowitz
United States District Judge